## FIFTH AMENDED AND RESTATED SENIOR SECURED PROMISSORY NOTE

$80,000,000.00

March 11, 2020,
as amended October 2, 2020,
as amended July 22, 2021,
as amended January 26, 2022,
as amended August 25, 2022,
as amended April 19, 2023
Sioux Falls, South Dakota

FOR VALUE RECEIVED, GOODMAN INVESTMENT HOLDINGS, LLC, a Texas limited liability company (as successor to GENESIS NETWORKS ENTERPRISES, LLC, a Texas limited liability company) (the "Borrower"), promises to pay to the order of NETWORK INVESTMENTS, LLC, a South Dakota limited liability company or its successors and assigns (the "Holder"), the principal amount of Eighty Million and 00/100 Dollars ($80,000,000.00) or so much thereof as has been advanced pursuant to the terms hereof and in accordance with the Amended and Restated Loan Agreement dated as of the date hereof by and between the Borrower and Holder (as amended from time to time, the "Loan Agreement"), together with interest on the unpaid amount of principal in accordance with the terms of this Note, from the date hereof until paid in accordance with the terms of this Fifth Amended and Restated Senior Secured Promissory Note (this "Note").

This Note was issued by Borrower to Holder pursuant to the terms of the Loan Agreement. Except as to those terms otherwise defined in this Note, all capitalized terms used in this Note shall have the meanings provided for in the Loan Agreement. This Note amends and restates in its entirety that certain Fourth Amended and Restated Senior Secured Promissory Note dated as of August 25, 2022 by and between the Borrower and the Holder (the "Original Note"). The Borrower acknowledges and agrees that all obligations under the Original Note remain outstanding and owing by the Borrower, and this Note shall not be considered a novation of the Original Note or the obligations thereunder. The following is a statement of the rights of the Holder and the terms and conditions to which this Note is subject, and to which the Holder hereof, by the acceptance of this Note, agrees:

1.    Advances; Interest; Payments.

1.1    Advances.   The Holder shall make advances under this Note pursuant to and subject to the limits, restrictions and satisfaction of the conditions contained in the Loan Agreement.

1.2    Interest.   Subject to the provisions on default interest contained in the Loan Agreement after the occurrence of a Default and notwithstanding anything to the contrary contained in the Original Note, at all times from and after July 1, 2020, interest shall be deemed to have accrued and shall continue to accrue on the outstanding principal balance of this Note at a rate per annum equal to twelve percent (12.0%). All interest calculations hereunder shall be computed on the basis of a 360 day year containing 12 months, counting the actual number of days in each month, compounding monthly. Interest accruing hereunder shall be due and payable quarterly in arrears on the last day of each quarter, commencing December 31, 2020, and

90012763v2

the balance at the Maturity Date (defined below).  The Holder agrees to pay the Borrower the Interest Rebate Amount (as hereinafter defined), if any, on or promptly after the Maturity Date, so long as the Rebate Conditions (as hereinafter defined) have been satisfied in full.  For purposes of this Note, the "Interest Rebate Amount" shall be that portion of interest accruing hereunder during the term of the Note at a rate equal to 2% per annum, and "Rebate Conditions" shall mean satisfaction of all of the following conditions: (i) no Default has occurred, (ii) the Borrower has paid to the Holder when due all payments of interest, principal and all other amounts owing hereunder or under and (iii) the Borrower and its Subsidiaries on a consolidated basis have achieved EBITDA, on a cumulative basis during the term of this Note, equal to or exceeding the forecasted EBITDA of the Borrower and its Subsidiaries on a consolidated basis (on a cumulative basis) set forth in the Borrower's annual budget for each year during the term of this Note, which budget shall be agreeable to the Holder in its sole discretion as and when proposed by the Borrower each year.  For purposes of the forgoing, "EBITDA" shall mean, for any applicable period, net income of the Borrower and its Subsidiaries on a consolidated basis for such period _plus_ without duplication and to the extent deducted in determining net income for such period, the sum of (i) interest expense of the Borrower and its Subsidiaries on a consolidated basis for such period, (ii) income tax expense for such period net of tax refunds, and (iii) all amounts attributable to depreciation and amortization expense for such period, all calculated for the Borrower and its Subsidiaries on a consolidated basis in accordance with GAAP and reasonably acceptable to the Holder.

1.3    Principal Payments.  The Borrower shall make an annual payment of principal on this Note in the amount of $5,000,000 on December 31 of each year during the term of this Note, commencing December 31, 2020.  The entire outstanding principal balance owing under this Note together with all accrued and unpaid interest thereon and any other amounts owing under this Note, Loan Agreement or any other Loan Document shall be due and payable in full on October 2, 2025 (the "Maturity Date").

1.4    Prepayments.  The Borrower may prepay this Note in whole or in part at any time without premium or penalty.

1.5    Application of Payments. All payments made hereunder shall be applied first to the payment of any expenses or costs of collection that may be due hereunder, and the balance shall be applied first to accrued and outstanding interest (if any), second to accrued and unpaid interest, third to the outstanding principal balance of the Note.

1.6    Default. Upon the occurrence of a Default and for so long as a Default shall continue under the Loan Agreement, (a) interest on the outstanding principal balance of this Note shall accrue at the default rate set forth in Section 6.2 of the Loan Agreement, and (b) in addition to the other remedies provided in the Loan Agreement, the entire unpaid principal and the entire unpaid principal balance, accrued and unpaid interest and any other amounts owing under this Note may be declared to be immediately due and payable, whereupon it shall become immediately due and payable; provided, that upon the occurrence of any Default under Section 5.4 of the Loan Agreement, the entire unpaid principal amount of the Note then outstanding, all interest accrued and unpaid thereon, and all other amounts payable under this Agreement and the other Loan Documents will be immediately and automatically due and payable without presentment, demand, protest or notice of any kind.

2

EMS_002667

1.7     Security.  The obligations of the Borrower under this Note are secured by, and as set forth in, the Security Agreement, the Company Pledge Agreement, the Guarantor Pledge Agreement, the Goodman Guaranty, the Collateral Assignment of Bonds, and the Collateral Assignment of GNI Purchase Option.

1.8     Records.  All borrowings evidenced by this Note and all payments and prepayments of the principal hereof and the date thereof will be recorded by Holder in its internal records; provided, that the failure of Holder to make such a notation or any error in such notation will not affect the obligations of the Borrower to make the payments of principal and interest in accordance with the terms of this Note and the Loan Agreement.

2.     Miscellaneous.

2.1     Transfer of Note.  Payment of principal or interest accruing thereon may only be made to, and upon the order of, the registered Holder.  This Note is transferable by a surrender of the Note to the Borrower, duly endorsed or accompanied by a written instrument of transfer executed by the registered Holder.  Upon surrender of this Note for transfer as provided above, and provided Holder has complied with all such restrictions, the Borrower shall issue a new Note to, and register such Note in the name of, the transferee and such new Note must contain the same legend as provided for in this Note.

2.2     Waivers and Agreements by the Borrower.  Borrower:

(a)     waives diligence, presentment, demand for payment, notice of dishonor, notice of non-payment, protest, notice of protest, and any and all other demands in connection with the delivery, acceptance, performance, default or enforcement of this Note;

(b)     agrees that Holder will have the right, without notice, to grant any extension of time for payment of any indebtedness evidenced by this Note or any other indulgence or forbearance whatsoever;

(c)     agrees that no failure on the part of Holder to exercise any power, right or privilege hereunder, or to insist upon the prompt compliance with the terms of this Note, will constitute a waiver of that power, right or privilege; and

(d)     agrees that the acceptance at any time by Holder of any past due amounts will not be deemed to be a waiver of the requirements to make prompt payment when due of any other amounts then or thereafter due and payable.

2.3     Titles and Subtitles.  The titles and subtitles used in this Note are for convenience only and are not to be considered in construing or interpreting this Note.

2.4     Notices.  Any notice required or permitted under this Note shall be given in writing and in accordance with Section 8.6 of the Loan Agreement (for purposes of which the term "Lender" shall mean Holder hereunder), except as otherwise expressly provided in this Note.

2.5     Attorneys' Fees and Expenses.  The Borrower shall promptly pay or reimburse Holder for all reasonable out-of-pocket expenses incurred by Holder in connection

90012763v2

EMS_002668

with the administration or enforcement of this Note, including the reasonable fees and out-of-pocket expenses of outside legal counsel to Holder.

2.6     Amendments and Waivers.   Other than the right to payment of the outstanding principal amount of this Note and accrued interest thereon, which may only be amended or waived with the written consent of Holder, any other term of this Note may be amended and the observance of any other term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Borrower and Holder and in accordance with the Loan Agreement.  Any amendment or waiver effected in accordance with this Section 2.6 shall be binding upon the Holder of this Note.

2.7     Severability.   If any provision of this Note is determined to be illegal, invalid or unenforceable by a court of competent jurisdiction, the legality, validity and enforceability of the remaining provisions of this Note shall not be affected thereby but shall continue in full force and effect.  In lieu of such illegal, invalid or unenforceable provision, there shall be automatically added as part of this Note a provision as similar in terms to such illegal, invalid or unenforceable provision as may be legal, valid and enforceable.

2.8     Governing Law.   This Note shall be governed by and construed and enforced in accordance with the substantive laws of the State of South Dakota, without giving effect to the conflicts of laws principles of any jurisdiction.

2.9     Consent to Jurisdiction.   AT THE OPTION OF THE HOLDER, THIS NOTE MAY BE ENFORCED IN ANY FEDERAL COURT OR SOUTH DAKOTA STATE COURT SITTING IN MINNEHAHA OR LINCOLN COUNTY, SOUTH DAKOTA; AND BORROWER AND THE HOLDER CONSENT TO THE JURISDICTION AND VENUE OF THOSE COURTS AND WAIVE ANY ARGUMENT THAT VENUE IN THOSE FORUMS IS NOT CONVENIENT.  IN THE EVENT BORROWER COMMENCES ANY ACTION IN ANOTHER JURISDICTION OR VENUE UNDER ANY TORT OR CONTRACT THEORY ARISING DIRECTLY OR INDIRECTLY FROM THIS NOTE OR THE RELATIONSHIP CREATED HEREUNDER, THE HOLDER AT ITS OPTION SHALL BE ENTITLED TO HAVE THE CASE TRANSFERRED TO ONE OF THE JURISDICTIONS AND VENUES ABOVE-DESCRIBED, OR IF THE TRANSFER CANNOT BE ACCOMPLISHED UNDER APPLICABLE LAW, TO HAVE THE CASE DISMISSED WITHOUT PREJUDICE.

2.10    Waiver of Jury Trial.    BORROWER AND HOLDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR RELATED TRANSACTIONS, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

2.11    Execution in Counterparts.   This Note may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

2.12    Loan Agreement.   This Note is issued in connection with, and is entitled to the benefits of, the Loan Agreement which, among other things, contains provisions for the

4

EMS_002669

acceleration of the maturity hereof upon the happening of certain events, and for the amendment or waiver of certain provisions of the Loan Agreement, all upon the terms and conditions therein specified.

*[Signatures are on following page]*

90012763v2

EMS_002670

IN WITNESS WHEREOF, the parties have caused this Senior Secured Promissory Note to be issued on the date first written above.

**BORROWER:**

**HOLDER:**

GOODMAN INVESTMENT HOLDINGS, LLC

NETWORK INVESTMENTS, LLC

Name: James Goodman

Name: T. Denny Sanford

Its: President

Its: Manager

[Signature Page to Fifth Amended and Restated Senior Secured Promissory Note]

90012763v2